IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RAWLINGS SPORTING GOODS COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| EASTON DIAMOND SPORTS, LLC, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) ) | |

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DAMAGES

Plaintiff Rawlings Sporting Goods Company, Inc. ("Rawlings" or "Plaintiff") hereby files this Complaint on personal knowledge as to its activities and on information and belief as to the activities of others.  Rawlings owns and has for many years offered bats under the well-known, distinctive trademark "5150."  This Complaint seeks a temporary restraining order, a preliminary injunction, and a permanent injunction, to stop Defendant Easton Diamond Sports, LLC ("Defendant" or "Easton") from using the confusingly similar designation "S150" for bats. On information and belief, Easton will release its "S150" bats on September 1, 2017. Accordingly, after an opportunity for Easton to respond, Rawlings requests an expedited, if not immediate, hearing on its request for a temporary restraining order.

## INTRODUCTION

1.     Rawlings is a leading manufacturer and marketer of sporting goods in the United

States.  Since the company's inception in 1887, Rawlings has enabled participation in sports activities by developing and producing innovative, high-performance equipment for the professional, amateur and entry-level player.  In keeping with that tradition, Rawlings introduced in 2009 a series of high-performance, high-quality baseball bats under the distinctive trademark "5150."  Rawlings extensively promoted the "5150" bats, and they have been very successful in the marketplace.  The trademark "5150" has been widely used throughout the United States on the bats, on displays associated with the bats, in advertising, and in various sales materials.  As a result, the public has come to know and rely on the trademark "5150" as identifying a high-performance, high-quality bat originating with a single source, Rawlings.  Rawlings has obtained incontestable U.S. Trademark Registration No. 3,758,544 to protect the valuable goodwill represented and symbolized by the trademark "5150."

2.     Defendant Easton Diamond Sports, LLC ("Easton" or "Defendant") is introducing a baseball bat for its 2018 line displaying the confusingly similar designation "S150."  On information and belief, Easton's "S150" bat is a relatively "low-end" model, meant to provide a cheaper alternative to other bats.  Easton's use of the designation "S150" for such bats is likely to cause confusion and mistake and to deceive customers and the public regarding the source of Easton's bat, and to dilute the distinctive quality of Rawlings's "5150" trademark in violation of federal and state law.

3.     Changes to certain baseball bat standards are set to go into effect on January 1, 2018.  Consequently, sporting goods manufacturers are launching new lines of baseball bats to be sold by retailers beginning as early as September 1, 2017.  Rawlings files this action in order to protect the public from being confused by Easton's unlawful use of the confusingly similar designation "S150" and to protect its valuable and well-known trademark "5150."

2

## THE PARTIES

4.      Plaintiff Rawlings Sporting Goods Company, Inc. is a corporation organized and existing under the laws of Missouri with a principal place of business at 510 Maryville University Dr., Suite 110, St. Louis, MO 63141.

5.      Defendant Easton Diamond Sports, LLC is a Delaware limited liability company with a principal place of business at 3500 Willow Ln., Thousand Oaks, CA 91361.

## JURISDICTION AND VENUE

6.      This is a complaint for trademark infringement and unfair competition arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended (the "Lanham Act"), and for common law trademark infringement, unfair competition, and dilution under the laws of the State of Missouri.

7.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §§ 1116 and 1121.  This Court has supplemental jurisdiction over the related state claims under 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over Defendant in that it does business in the State of Missouri and in this District, and because it either has already offered, sold, or distributed or intends to offer, sell, or distribute infringing merchandise within this State, or has otherwise made or established contacts within this State sufficient to permit the exercise of personal jurisdiction.

9.      Venue is appropriate in this judicial district under 28 U.S.C. § 1391 in that Defendant is subject to personal jurisdiction in this judicial district, and this is the District in which a substantial part of the event or omissions giving rise to the claims hereinafter set forth occurred.

## BACKGROUND FACTS
### Rawlings Adopts and Uses "5150" for Bats

10.     Rawlings was founded in 1887 and is a leading manufacturer and marketer of sports goods.  Rawlings has a long history and reputation of innovation in the field of sports equipment.  For example, Rawlings was instrumental in the creation of the modern baseball glove, and introduced the "Gold Glove" award in Major League Baseball.  Rawlings has developed apparel and equipment for athletes of all ages and skill levels.  Rawlings has specialized in baseball equipment, including bats.

11.     Rawlings has for many decades offered bats for sale.  Competition in the sale of bats is fierce.  In the mid-2000's, Rawlings bat sales lagged, but consumers were seeking a high-performance, high quality bats.  In support of such consumers, Rawlings undertook to develop a unique high quality bat that provided consumers with exceptional performance in terms of balance, strength, durability, "quick" bat speed, and appearance.  Through extensive research and development, Rawlings developed technology that focuses or consolidates energy in such a way as to enhance the "trampoline-like effect" at the bat's point of contact with the ball.  Rawlings also developed a premier grip, designed for easier wrapping by a hitter's fingers, which is intended to allow for more consistent power.

12.     Rawlings sought a unique trademark that would differentiate its new bats from those of others in the marketplace.  After significant deliberation, Rawlings selected the numeric, arbitrary trademark "5150" to identify its new bats and the technology employed therein.  The mark "5150" was adopted for three types of bats:  (1) the "5150" Composite bat; (2) the "5150 Hybrid" bat; and (3) the "5150" Alloy bat.

13.     In 2009, Rawlings introduced its new "5150" series bats, including multiple models for youth, high school, college, and senior league players.  Each model displayed the

4

"5150" trademark in a prominent fashion:



Rawlings extensively promoted the new "5150" bats, displaying the "5150" trademark on accessory products such as bat racks, offering the "5150" bats in printed and online catalogs, and promoting the "5150" bats at trade shows, retail outlets and specialty sporting goods stores.

14.      Rawlings also conducted other promotional activities, such as sponsoring prominent college baseball teams.  For example, the University of Virginia Baseball team recently won the National Collegiate Athletic Association College World Series ("CWS") swinging Rawlings's "5150" bats.  Television coverage of the CWS provided significant national exposure of the "5150" bat and the trademark "5150." Such prominent and extensive use of the trademark "5150" generated substantial public recognition of the trademark, and encouraged use of the "5150" bats in high school and youth leagues.

15.      Over the years, Rawlings continued to improve its "5150" bats.  For example, in 2011, the Batted Ball Coefficient of Resolution (BBCOR) rules were adopted, which addressed the in bound and rebound speeds of the baseball.  The effect of the BBCOR rules was to cause non-wood bats to perform in a manner more comparable to wood bats.  Even under yet still in accordance with those new rules, Rawlings's "5150" bats continued to provide exceptional

performance in terms of balance, strength, durability, "quick" bat speed, and appearance.  Sales of the "5150" bat series were and continue to be extremely strong.

16.     Rawlings continued to extensively and continuously use the trademark "5150" in association with bats.  Sales of the "5150" bats have exceeded 300,000 units and 22 Million Dollars ($22,000,000.00).  Such substantial sales demonstrate that the mark "5150" has achieved substantial public recognition.

17.     As a result of Rawlings's continuous and extensive use and promotion of the trademark "5150" in connection with bats, the mark enjoys wide public acceptance and association with Rawlings, and has come to be recognized widely and favorably by the public as a strong trademark indicating Rawlings as the source of such bats.

18.     As a result of Rawlings's extensive use and promotion of bats bearing the trademark "5150," and the trademark "5150" itself, Rawlings has built and owns a valuable goodwill that is symbolized by the trademark.  The relevant public strongly associates the trademark "5150" with Rawlings.

## Rawlings's Incontestable Rights in the "5150" Trademark

19.     Rawlings has acted to protect its goodwill in the distinctive trademark "5150." More particularly, Rawlings obtained U.S. Trademark Registration No. 3,758,544 for the mark "5150" as used for sporting goods, namely, baseball bats and softball bats.

20.     Attached to this Complaint as Exhibit A is a true and correct copy of U.S. Trademark Registration No. 3,758,544, showing Rawlings as the owner of the trademark.  The registration in Exhibit A is valid, subsisting, unrevoked, and uncancelled.  In accordance with 15 U.S.C. § 1057, this registration is evidence of Rawlings's exclusive right to use the mark "5150" in commerce with such goods.

6

21.     In accordance with 15 U.S.C. §§ 1058 and 1065, Rawlings has filed affidavits of continuing use and incontestability regarding the registered trademark "5150."  Thus, in accordance with 15 U.S.C. § 1115, U.S. Trademark Registration No. 3,758,544 is conclusive evidence of the validity of the mark "5150," and of Rawlings's exclusive right to use the mark "5150" in commerce with bats.  The mark "5150" is a strong source indicator identifying Rawlings as the source of bats bearing the trademark.

22.     As a further result of its continuous and extensive use of the distinctive trademark "5150," Rawlings also owns common law rights in this mark for use in connection with bats. These registered and common law trademarks are hereinafter collectively referred to as the "5150 Trademark."

23.     The 5150 Trademark has been and continues to be clearly and prominently displayed on the "5150" series bats.  The 5150 Trademark has been displayed in different fonts and various colors.  In fact, the mark "5150" has become so well known that the public refers to bats bearing the 5150 Trademark as being made with the "5150" alloy.

24.     Rawlings has and continues to conduct its business and to offer and sell bats throughout the United States, both online and in retail stores.  Rawlings bats bearing the 5150 Trademark are sold through retailers such as Dick's Sporting Goods, Academy Sports + Outdoors, Modell's Sporting Goods, and at Rawlings's own website (www.rawlings.com) and retail outlets.  Rawlings's "5150" series bats generally retail for prices between $100-300, with some youth models retailing for prices between $50-70.

25.     Rawlings has and continues to maintain quality control standards for all of its "5150" bats, thus ensuring that Rawlings's bats bearing the well-known 5150 Trademark are of the highest quality and that the relevant public can continue to rely on the 5150 Trademark to

identify a bat that originates with Rawlings.

26.     Rawlings has and continues to feature its "5150" series bats and the 5150 Trademark prominently in Rawlings's advertising.  The 5150 Trademark has been and continues to be recognized as a symbol of quality that is uniquely associated with Rawlings.  The relevant public has and continues to rely on the 5150 Trademark.

### More New Bat Regulations

27.     USA Baseball is the national governing body for amateur baseball.  USA Baseball sets regulations for bats used by member organizations.

28.     USA Baseball has recently released additional new regulations for bats used in youth baseball leagues, which will go into effect beginning on January 1, 2018.  The new USA Baseball regulations will affect baseball players who are age 14 and younger.

29.     The new USA Baseball regulations have been adopted by multiple leagues, including the American Amateur Baseball Congress (AABC), Amateur Athletic Union (AAU), Babe Ruth Baseball/Cal Ripken Baseball, Dixie Youth Baseball, Little League® Baseball and PONY™ Baseball.

30.     On September 1, 2017, pursuant to the new USA Baseball regulations, bat manufacturers, including Rawlings and Easton, will release for sale to the public new baseball bats compliant with such regulations.

31.     Bats currently approved for youth baseball leagues governed by USA Baseball cannot be used in USA Baseball-compliant leagues starting January 1, 2018.

### Defendant's Infringing Conduct

32.     Defendant Easton is a sporting goods company.  Easton sells, among other products, bats in competition with Rawlings.

8

33.     Defendant Easton is offering a new line of bats for the 2018 season that, on information and belief, is to be sold beginning on or about September 1, 2017, displaying the designation "S150."

34.     However, even prior to the proper sale date of bats that are compliant with the new bat regulations (September 1, 2017), third-party websites such as that at http://www.safetyfirstsports.com/easton-S150-10-2-1-4-baseball-bat are already advertising bats under the "S150" designation. *See* Exhibit B.

35.     On information and belief, Defendant Easton has already manufactured bats bearing the designation "S150" and will offer such bats for sale on September 1, 2017.

36.     Accordingly, for 2018, Defendant Easton will manufacture, advertise, distribute, offer for sale, and/or sell bats bearing the designation "S150" (sometimes referred to as the "Infringing Bats"), in competition with Rawlings's bats bearing the 5150 Trademark:



Easton's "S150" bat

Rawlings's 5150 bats

37.     The bats offered and sold by Easton bearing the designation "S150" are similar to, and compete with, bats sold by Rawlings, and in particular bat bearing he well-known trademark

"5150."  The parties' respective bats are sold in overlapping channels of trade.

## Easton's knowledge of the "5150" Trademark and Intent

38.     Rawlings used the 5150 Trademark before Easton began using the confusingly similar designation "S150."

39.     On information and belief, Defendant Easton had actual knowledge the 5150 Trademark before it selected the designation "S150" for Easton's new bat.

40.     On information and belief, Defendant Easton has actual knowledge of the 5150 Trademark and Rawlings's use of the 5150 Trademark for bats when Easton selected the designation "S150" for Easton's new bat.

41.     On information and belief, before it determined to adopt and use the designation "S150" for a bat, Easton had constructive knowledge of Rawlings's federally-registered rights in and to the 5150 Trademark.

42.     On information and belief, Easton also had actual knowledge of Rawlings's use of the 5150 Trademark by virtue of its 2016 hiring of Mike Thorne, Rawlings former Senior Vice President for Sales and Customer Service.  While at Rawlings, Mr. Thorne had responsibility for sales and service of bats bearing the 5150 Trademark.  On information and belief, in his role at Easton, Mr. Thorne served (and/or serves) as the Executive Vice President for Baseball and Softball.  Mr. Thorne was aware of Rawlings substantial brand equity in the 5150 Trademark and, on information and belief, would also be aware of the unique opportunity to exploit such brand equity as manufacturers replace the "pipeline" of bats following a significant change in bat regulations.

43.     On information and belief, Defendant had actual and constructive knowledge of Rawlings's superior and prior rights and reputation in and to the 5150 Trademark and has,

nonetheless, acted to capitalize on such rights for its own benefit.  In so doing, Easton harms both the public and Rawlings, and will be unjustly enriched.

44.     Defendant's use of the designation "S150" on bats is likely to cause confusion, mistake or deception with Rawlings's bats bearing the well-known 5150 Trademark.

45.     Bats manufactured, advertised, distributed, offered for sale, or sold by Easton under the designation "5150" are not manufactured or approved by Rawlings, nor is Easton or Easton's bats associated or connected with Rawlings, or licensed, authorized, governed, endorsed, or approved by Rawlings in any way.

46.     Defendant's use of a confusingly similar imitation of the 5150 Trademark is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that Easton's "S150" bats are manufactured by, authorized by, sponsored by or endorsed by, or in some manner associated with Rawlings, which it is not.  Such a likelihood is causing and will continue to cause irreparable harm to the goodwill symbolized by the 5150 Trademark and the reputation for quality that the 5150 Trademark has earned due to Rawlings substantial investment and effort.

47.     Defendant's use of a confusingly similar imitation of the 5150 Trademark is likely to cause confusion before, during, and after the time of purchase because purchasers and prospective purchasers and others are likely to mistakenly attribute to Rawlings an Easton bat bearing the designation "S150."  This is particularly damaging with respect to persons who perceive the Easton bat as less desirable due to a lack of quality or performance relative to Rawlings's bats bearing the 5150 Trademark.  Defendant is thus causing irreparable harm to the goodwill symbolized by the 5150 Trademark.

## Rawlings's Efforts to Resolve the Likelihood of Confusion

48.     Rawlings learned of Easton's Infringing Bats and promptly sought to address the likelihood of confusion.

49.     On June 22, 2017, counsel for Rawlings contacted Easton to request that Easton cease efforts to use the mark "S150," or any similar mark, in any form or media, as a trademark, service mark, domain name, or trade name.  A copy of Rawlings's counsel's letter to Easton is attached hereto as Exhibit C.  Despite this further notice of Rawlings's rights in the 5150 Trademark, Easton refused to cease efforts to offer and sell bats under the designation "S150" for the 2018 season.  Easton did not formally respond to the letter, but on July 19th, Easton's counsel advised in a phone call to Rawlings's counsel that Easton would not agree to stop selling bats under the designation "S150" in 2018.

50.     Defendant Easton has knowingly manufactured and will offer for sale, sell, and/or distribute Infringing Bats bearing the confusingly similar designation "S150" in interstate, intrastate, and foreign commerce, including commerce in the State of Missouri and in this judicial district.

51.     Defendant has knowingly advertised and promoted the Infringing Bats using the confusingly similar "S150"designation.

52.     Defendant Easton is not authorized by Rawlings to manufacture, advertise, distribute, sell, or offer to sell products bearing the 5150 Trademark or bearing any designation colorably similar thereto.

53.     Upon information and belief, the designation "S150" is being used by Defendant to confuse, mislead, deceive, and entice customers to purchase the Infringing Bats and to thus take away from the sale of Rawlings's bats bearing the well-known 5150 Trademark.  On further

information and belief, Defendant is aware of the new bat regulations effective January 1, 2018 and intends to use the confusingly similar designation "S150" during this key time in the introduction of new, compliant bats by all manufacturers as a result of the new bat regulations described hereinabove.  Rawlings has no adequate remedy at law for such harm.

**FIRST CLAIM FOR RELIEF**
**(Federal Trademark Infringement – 15 U.S.C. § 1114)**

54.     Plaintiff hereby realleges and incorporates by reference Paragraphs 1–53 of this Complaint as if fully set forth herein.

55.     The 5150 Trademark and the goodwill of the business associated therewith is of great and significant value, is highly distinctive and arbitrary, and has become associated in the public mind with products of high quality and reputation finding their source in Rawlings.

56.     Without Rawlings's authorization or consent, but with knowledge of Rawlings's well-known prior rights in the 5150 Trademark, and in view of the fact that Defendant's "S150" designation is confusingly similar to the 5150 Trademark, Defendant has, on information and belief, intentionally and knowingly manufactured, distributed, and on September 1 2017 will distribute, offer for sale and sell Infringing Bats to the consuming public in direct competition with Plaintiff's sale of bats bearing the well-known 5150 Trademark, in or affecting interstate commerce.

57.     The 5150 Trademark is arbitrary, and Plaintiff Rawlings has built strong trademark in the 5150 Trademark as used for bats.  The designation "S120" is confusingly similar to the 5150 Trademark.  The bats offered by the parties are competitively proximate, including in that they are offered to substantially the same consumers in substantially the same channels of trade.  Defendant Easton has not acted to avoid a likelihood of confusion, but instead, demonstrated an intent to capitalize on Rawlings's goodwill symbolized by the 5150

13

Trademark.  While there has thus far been relatively little opportunity for actual confusion, the parties will, on information and belief, significantly expand activities under their respective uses of the 5150 Trademark and the "S150" designation on or about September 1, 2017, and relevant purchasers will not or will not be able to exercise such care as to distinguish between the 5150 Trademark and the confusingly similar "S150" designation.

58.     Defendant's use of the "S150" designation is likely to cause, is causing, and will continue to cause confusion, mistake, and deception among the general purchasing public as to the origin of Defendant's Infringing Bats, and is likely to deceive the public into believing that Defendant's Infringing Bats originate from, are associated with, are connected with or are otherwise authorized by Plaintiff, to the damage and detriment of Rawlings's reputation, goodwill, and sales.

59.     Easton has used and intends to use the designation "S150," which is confusingly similar to Rawlings's federally registered mark "5150" shown in U.S. Registration No. 3,758,544, in violation of 15 U.S.C. § 1114.  Moreover, Easton has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion, mistake, and deception of the public and, additionally, injury to Rawlings's goodwill and reputation as symbolized by the federally registered 5150 Trademark, for which Rawlings has no adequate remedy at law.

60.     Defendant's use of the "S150" designation is additionally likely to cause post-sale confusion, mistake, and deception among prospective consumers who did not purchase the Infringing Bats, but view them and mistakenly believe that bats bearing the "S150" designation sold by Defendant originate from, are associated with or are otherwise authorized by Rawlings, all to the damage and detriment of Rawlings's reputation, goodwill, and sales and in violation of its federally registered trademark "5150."

61.     Rawlings does not have an adequate remedy at law and, if Defendant's activities are not enjoined, Rawlings will continue to suffer irreparable harm and injury to its goodwill and reputation.  As a result of Defendant's activities, Rawlings has been damaged in an amount to be ascertained at trial.

62.     Defendant has caused and, particularly after September 1, 2017, will continue to cause harm to the public and to Rawlings, and Rawlings is entitled to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

<u>SECOND CLAIM FOR RELIEF</u>
(Federal Unfair Competition – 15 U.S.C. § 1125(a))

63.     Plaintiff hereby realleges and incorporates by reference the preceding allegations of paragraphs 1–62 of this Complaint as if fully set forth herein.

64.     Defendant's "S150" bats are of the same general nature and type as Plaintiff's bats.  Defendant's use of the "S150" designation is likely to cause confusion, mistake, and deception among the general purchasing public.

65.     By misappropriating and using the 5150 Trademark, Defendant misrepresents and falsely describes to the relevant public the origin and source of Defendant's bats and creates a likelihood of confusion by purchasers as to the source, sponsorship, endorsement, or approval of Rawlings.

66.     Defendant's unlawful, unauthorized, and unlicensed manufacturing, advertising, distributing, offering for sale and/or selling of bats under the designation "S150" misrepresents that such bats were created, authorized, or approved by Rawlings, resulting in Defendant's profit and Plaintiff's injury.

67.     Easton's acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

15

1125(a), in that Defendant's use of the "S150" designation, in connection with the bats, in interstate commerce constitutes false representation, false description, and false designation of origin and unfair competition.

68.     Plaintiff has no adequate remedy at law.  If Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation as symbolized by the 5150 Trademark.  As a result of Defendant's activities, Plaintiff has been damaged in an amount to be ascertained at trial.

69.     Defendant has caused and, particularly after September 1, 2017, will continue to cause harm to the public and to Rawlings, and Rawlings is entitled to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125, 1116, and 1117.

### THIRD CLAIM FOR RELIEF
#### (Common Law Trademark Infringement)

70.     Plaintiff hereby realleges and reincorporates by reference the preceding allegations of paragraphs 1–69 of this Complaint as if fully set forth herein.

71.     The 5150 Trademark is a valid mark at common law.  As a result of Plaintiff's efforts and investments in producing and marketing the "5150" services bats under the 5150 Trademark, Rawlings has built and accumulated a valuable goodwill in the 5150 Trademark. The 5150 Trademark has become strongly associated with the "5150" series bats and the Rawlings brand, and has come to symbolize the reputation for quality and performance of Rawlings's "5150" series bats.

72.     Defendant's unauthorized use of the "S150" designation, which is confusingly similar to the 5150 Trademark, is likely to and does permit Defendant to pass off its bats to the general public, to the detriment of Plaintiff and to the unjust enrichment of Easton.  Such acts by

Easton have caused and will continue to cause confusion as to the source and/or sponsorship of the Infringing Bats.

73.     Defendant's acts constitute willful infringement of Plaintiff's exclusive rights in the 5150 Trademark, in violation of state common law.

74.     As a direct and proximate result of Easton's conduct, Plaintiff has suffered damage to its valuable 5150 Trademark in an amount to be ascertained at trial.

75.     Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendant's sale of products displaying the designation "S150" unless this Court enjoins Defendant from such acts of unfair competition.

## FOURTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

76.     Plaintiff hereby realleges and reincorporates by reference the preceding allegations of paragraphs 1–75 of this Complaint as if fully set forth herein.

77.     The 5150 Trademark is a valid mark at common law.  As a result of Plaintiff's efforts and investments in producing and marketing the "5150" series bats, Rawlings has built and accumulated a valuable goodwill in the 5150 Trademark.  The 5150 Trademark has become associated with the "5150" series bats and the Rawlings brand, and has come to symbolize the reputation for high quality and high performance of Rawlings's "5150" bats.

78.     On information and belief, Easton defendant, with constructive and actual knowledge of the 5150 Trademark, intended to and did trade on the goodwill associated with and symbolized by the 5150 Trademark.

79.     Easton's acts have confused, misled or deceive the relevant public, and will continue to confuse, mislead or deceive the relevant public as to the source of the Infringing Bats.  Defendant has attempted to pass off Defendant's bats as those of Rawlings, and to falsely

suggest a connection with Rawlings.  Therefore, Defendant has committed unfair competition in violation of state common law, and on information and belief, will continue to do so especially after September 1, 2017 despite knowledge of Rawlings's prior and superior use of the 5150 Trademark.

80.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damage to its valuable 5150 Trademark in an amount to be ascertained at trial.

81.     Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendant's sale of bats bearing the designation "S150" unless this Court enjoins Defendant from such fraudulent business practices.

### FIFTH CLAIM FOR RELIEF
**(Violation of Missouri Anti-Dilution Statute - Mo. Rev. Stat. Chapter 417.061)**

82.     Plaintiff hereby realleges and reincorporates by reference the preceding allegations of paragraphs 1–81 of this Complaint as if fully set forth herein.

83.     The 5150 Trademark is a distinctive and well-known trademark within the meaning of Chapter 417 of the Missouri Revised Statutes and has been a distinctive mark since prior to Defendant's conduct as alleged herein.

84.     Defendant's advertisement, manufacture, distribution, sale, and/or offer for sale in commerce of bats bearing the "S150" designation dilutes and will continue to dilute the distinctive quality of Plaintiff's well-known 5150 Trademark.

85.     On information and belief, Defendant's unauthorized use of the 5150 Trademark was and is being done with notice and knowledge that such manufacture, distribution, sale, and/or offer for sale was not authorized or licensed by Plaintiff.

86.     On information and belief, Defendant's aforesaid acts are in knowing and willful violation of Plaintiff's rights under Chapter 417.061 of the Missouri Revised Statutes.

87.     Rawlings has no adequate remedy at law and, if Defendant's activities are not enjoined, will continue to suffer irreparable harm and injury to Plaintiff's goodwill and reputation and to the distinctiveness of the 5150 Trademark.

## JURY DEMAND

88.     Plaintiff hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rawlings Sporting Goods Company, Inc. respectfully requests entry of judgment in its favor and  against Defendant on all of the above causes of action as follows:

1.  That this Court temporarily restrain Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them from releasing or selling or otherwise promoting any bats under the designation "S150," including but not limited to (1) YSB18S150 27/17 S150 2-1/4 - 10; (2) YSB18S150 28/18 S150 2-1/4 -10; (3) YSB18S150 29/19 S150 2-1/4 -10; (4) YSB18S150 30/20 S150 2-1/4 -10; and (5) YSB18S150 31/21 S150 2-1/4 -10, and that this Court schedule a preliminary injunction hearing during the pendency of said temporary restraining order;

2.  That this Court preliminarily and permanently enjoin Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them:

    a.  From using in any manner the 5150 Trademark, or any other designation that is likely to cause confusion, mistake or deception therewith or to dilute the distinctive value of the 5150 Trademark, including but not limited to, the

designation "S150" in connection with the manufacturing, advertising,
distributing, offering for sale, or sale of bats or any other product not
authorized by Plaintiff to be sold in connection with each of Rawlings's
"5150" series bats under the 5150 Trademark;

    b. From committing any acts calculated to cause purchasers to believe that the
Infringing Bats are those sold under the control and supervision of Plaintiff,
or sponsored or approved by, or connected with, or guaranteed by, or
produced under the control and supervision of Plaintiff;

    c. From otherwise diluting and/or infringing the 5150 Trademark, or otherwise
damaging Plaintiff's goodwill;

3. That this Court enter a judgment finding that Defendant has infringed, and willfully
infringed, the 5150 Trademark;

4. That this Court enter a judgment finding that Defendant has diluted, and willfully
diluted, the 5150 Trademark;

5. That this Court enter a judgment finding that Defendant's use of the designation
"S150" has caused and/or are likely to cause confusion among the general
purchasing public as to the source of origin of the Defendant's bats;

6. That this Court enter a judgment finding that Defendant's use of the "S150"
designation caused and/or is likely to cause confusion, including but not limited to
post-sale confusion among the general purchasing public as to the source of origin
of Defendants' bats;

7. That this Court order Defendant to deliver up for destruction or show proof of
destruction of any and all products, advertisements, publications, labels and any

other materials in its possession, custody, or control that depict or reference the

trademarks covered by this Court's judgment;

8.  That this Court order Defendant to file with this Court and to serve upon Rawlings

a report in writing and under oath setting forth in detail the manner and form in

which Defendant has complied with any injunction resulting from this matter

within thirty (30) days after service of such injunction;

9.  That this Court award Rawlings such damages, compensatory and otherwise, as the

proof may show;

10. That this Court award Rawlings its reasonable attorneys' fees and costs incurred in

connection with this action; and

11. That this Court grant such other and further relief as this Court may deem just,

proper and equitable under the circumstances.

Respectfully submitted, this 15th day of August, 2017.

HUSCH BLACKWELL LLP

/s/ Michael R. Annis
HUSCH BLACKWELL LLP
Michael R. Annis, Bar No. 47374MO
Jonathan Schmalfeld. Bar No. 68374MO
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone:  (314) 480-1500
Fax:  (314) 480-1505
*mike.annis@huschblackwell.com*
*jonathan.schmalfeld@huschblackwell.com*

MEUNIER CARLIN & CURFMAN LLC

Stephen M. Schaetzel (*Pro hac to be filed*)
Georgia State Bar No. 628653

Mary Katherine Bates (*Pro hac to be filed*)
Georgia State Bar No. 384052
Sarah M. Kessler (*Pro hac to be filed*)
Georgia State Bar No. 579123
*sschaetzel@mcciplaw.com*
*kbates@mcciplaw.com*
*skessler@mcciplaw.com*

COUNSEL FOR PLAINTIFF
RAWLINGS SPORTING GOODS COMPANY, INC.

999 Peachtree Street, N.E.
Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile:  (404) 645-7707

## VERIFICATION OF COMPLAINT

I am Jeff Fiorini, an employee of Plaintiff Rawlings Sporting Goods Company, Inc., and am authorized to make this verification for and on its behalf, and I make this verification for that reason.  I have read the foregoing Complaint for Preliminary Injunction, Permanent Injunction, and Damages and know its contents.  I am informed and believe, and on that ground allege, that the matters stated in the foregoing document are true and correct to the best of my knowledge.

Executed this 15th day of August, 2017.

_____
Jeff Fiorini