IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RAWLINGS SPORTING GOODS COMPANY INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No. 4:17cv2259 ) ) |
| EASTON DIAMOND SPORTS, LLC. | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order (ECF No. 4). After reviewing the Verified Complaint, Motion for Temporary Restraining Order and the Memorandum in Support thereof, and having heard the arguments of counsel and being fully advised in the premises, the Court hereby denies Temporary Restraining Order as follows:

1. Plaintiff Rawlings Sporting Goods Company, Inc. ("Rawlings") is a leading manufacturer and marketer of sporting goods, including baseball bats, in the United States. In 2009, Rawlings introduced a series of high-end baseball bats under the distinctive trademark "5150".[1]

2. Defendant Easton Diamond Sports, LLC ("Easton" or "Defendant"), a leading manufacturer of baseball and softball equipment, is introducing a baseball bat for its 2018 line with the model "S150." Easton's S150 is a relatively "low-end" model, meant to provide a cheaper alternative to other bats.

---

[1] Rawlings has obtained U.S. Trademark Registration No. 3,758,544 on "5150."

1

3. Rawlings argues that Easton's use of the designation "S150" on its baseball bats is likely to cause confusion and mistake and will dilute the distinctive quality of Rawlings's "5150" trademark in violation of state and federal law.

**Standard of Review**

4. "The Lanham Act prohibits the unauthorized use of another's registered trademark without the registrant's consent in a manner that is 'likely to cause confusion, or to cause mistake, or to deceive.'" *Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC*, 829 F. Supp. 2d 836, 842 (D. Minn. 2011) (citing 15 U.S.C. § 1114(1)(a)). Such unauthorized use gives rise to liability and may be enjoined. *Id.* § 1116(a).

5. The Eighth Circuit has consistently used the following six factors, sometimes referred to as the "*SquirtCo* factors," to evaluate the likelihood of confusion in trademark cases:

(1) the strength of the owner's mark;

(2) the similarity of the owner's mark and the alleged infringer's mark;

(3) the degree to which the products compete with each other;

(4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner;

(5) incidents of actual confusion; and

(6) the type of product, its costs, and conditions of purchase.

*Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1053 (8th Cir.2005); *see also SquirtCo v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980). "No one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." *Kemp*, 398 F.3d at 1054.

6. In order to be entitled to injunctive relief, Rawlings must establish a substantial likelihood of prevailing on the merits of its claims. *Anheuser–Busch, Inc. v. VIP Products, LLC*,

2

666 F.Supp.2d 974, 981–82 (E.D.Mo.2008) (citing *Planned Parenthood Minn. v. Rounds*, 530 F.3d 724, 732 (8th Cir.2008) (en banc) ("If the party with the burden of proof makes a threshold showing that it is likely to prevail on the merits, the district court should then proceed to weigh the other *Dataphase* factors.").

**Discussion**

7. The Court holds that there is little likelihood of confusion.[2] "In order to prevail on a trademark-infringement claim, a plaintiff must prove a likelihood of consumer confusion, which is the 'hallmark of any trademark infringement claim.'" *Minnesota Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997) (quoting *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 80 (2d Cir. 1994)).

8. The Court holds that the predominance of the house brand on each of the baseball bats readily distinguishes the bats from those of the competitors. *See ZW USA, Inc. v. PWD Sys., LLC*, 208 F. Supp. 3d 1025, 1047 (E.D. Mo. 2016) (citing *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 765 (8th Cir. 2010) (The "prominent display of" a company's "house marks" with a product also reduces the likelihood of confusion.). All of Rawlings's and Easton's baseball bats boldly include the Rawlings or Easton branding in addition to the model name or number. Likewise, it is undisputed that Rawlings' marketing and point of sale materials prominently feature the Rawlings and Easton marks and indicators. Further inspection of the baseball bats show that sub-marks on the baseball bats are not as easily seen as the house brands and take on a subservient role to the house brand.

---

[2] Neither party has submitted evidence of actual confusion, but Plaintiff is not required to prove any instances of actual confusion. *See Cmty. of Christ Copyright Corp. v. Devon Park Restoration*, 683 F. Supp. 2d 1006, 1015 (W.D. Mo. 2010); *ZW USA, Inc. v. PWD Sys., LLC*, 208 F. Supp. 3d 1025, 1050 (E.D. Mo. 2016).

9. In addition, the Court holds that the sub-marks on the product are not so similar as to cause a likelihood of confusion. The "S"150 is not the same as Rawlings's 5150 designation. A visual comparison between the S150 and 5150 demonstrates the differences between the two designations. Easton's S150 model number is displayed on the barrel of the bat in a two-color scheme to separate the letter S from the number 150. In addition, the "S" is in a different font from the 150, which further differentiates the mark from Rawlings's "5150".

10. The Court also does not impute any untoward purpose behind Easton's use of the "S150" designation. Easton has utilized the "S" series for – years, and recently added the "50" this year to all of its lines of bats. *See SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157-58 (9th Cir.), cert. denied, 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963) ("Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion, but intent is not an element of a claim for trademark infringement.").

11. Further, the Court finds that Rawlings's delay in filing for injunctive relief also weighs against granting a temporary restraining order (TRO). Rawlings became aware of Easton's S150 model bat in May, but did not contact Easton until June 22, 2017. Then, after Easton responded on July 19, 2017 that it was not willing to change the design of their S150 bats for this season, Rawlings did not contact Easton again until it filed its Complaint and Motion for Temporary Restraining Order on August 15, 2017.

12. Similarly, the Court holds that Rawlings cannot show irreparable harm. The Court finds that any alleged injury to Rawlings as a result of confusion between Rawlings's "5150" mark and Easton's "S150" designation can be compensated through money damages. *See Graham Webb Int'l v. Helene Curtis Inc.*, 17 F. Supp. 2d 919, 924 (D. Minn. 1998)

4

("Plaintiff must first establish that irreparable harm will result without injunctive relief and that such harm will not be compensable by money damages."); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959) ("[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.").

13. Accordingly, the Court hereby denies Rawlings's Motion for Temporary Restraining Order (ECF No. 4).

**IT IS SO ORDERED.**

Dated this 31st day of August, 2017.

_____
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

5